UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRIS MILLER,

    Plaintiff,

-VS-

                                  CASE NO.:

HYUNDAI CAPITAL AMERICA,
INC., d/b/a KIA MOTORS FINANCE,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, Chris Miller, by and through the undersigned counsel, and sues Defendant, HYUNDAI CAPITAL AMERICA, INC. d/b/a KIA MOTORS FINANCE, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like HYUNDAI CAPITAL AMERICA, INC (hereinafter "Defendant") from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Pinellas County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Pinellas County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is a corporation which was formed in with its principal place of business located at 3161 Michelson Drive, Suite 1900, Irvine, CA 92612 and which conducts business in the State of Florida through its registered agent, NRAI Services, Inc., located at 122 South Pine Island Road, Plantation, FL 33324.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant called Plaintiff on Plaintiff's cellular telephone approximately one hundred fifty (150) times in an attempt to collect a debt.

17. Defendant attempted to collect an alleged debt related to an auto loan from Plaintiff by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, because she heard a pause when she answered her phone before a voice came on the line, and also because she received "abandoned calls", a common indicator that an autodialer is being used to place a telephone call.

19. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (727) *** 5958 and was the called party and recipient of Defendant's calls.

20. Defendant placed an exorbitant number of autodialed telephone calls to Plaintiff's cellular telephone (727) *** 5958 in an attempt to collect on an auto loan.

21. The auto-dialer calls from Defendant came from telephone numbers including but not limited to (866) 331-5632, and when those numbers are called a pre-recorded voice or agent answers and identifies the number as belonging to Defendant.

22. On several occasions since the calls began Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone number. Specifically, shortly after the calls began Plaintiff advised that she was simply a co-signer; that Defendant should call her daughter for payment, not Plaintiff; and that Plaintiff wanted the "calls to stop." Plaintiff's daughter (co-signer on the account) has also asked Defendant to please stop calling Plaintiff on her cellular telephone. Unfortunately, Defendant has continued to call Plaintiff's cellular telephone number dozens of times since her original request for calls to stop.

23. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

24. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

25. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

26. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

27. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

28. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

29. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

30. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

31. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

32. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

33. From each and every call placed without consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

34. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular telephone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

35. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste

time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

37. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

38. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's phone or network.

39. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

40. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, frustration, anxiety, nervousness, embarrassment, and aggravation.

## COUNT I
### (Violation of the TCPA)

41. Plaintiff fully incorporates and re-alleges paragraphs 1 through 40 as if fully set forth herein.

42. HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE that she wished for the calls to stop.

43. HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II

**(Violation of the FCCPA)**

44. Plaintiff fully incorporates and re-alleges paragraphs 1 through 40 as if fully set forth herein

45. At all times relevant to this action HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

46. HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

47. HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

48. HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA MOTORS FINANCE for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and

any other such relief the court may deem just and proper.

                    Respectfully submitted,

                    */s/Frank H. Kerney, III, Esquire*
                    Frank H. Kerney, III, Esquire
                    Morgan & Morgan, Tampa, P.A.
                    One Tampa City Center
                    201 N. Franklin Street, 7th Floor
                    Tampa, FL 33602
                    Tele: (813) 223-5505
                    Fax: (813) 223-5402
                    Florida Bar #: 88672
                    FKerney@ForThePeople.com
                    JKneeland@ForThePeople.com
                    SNazario@ForThePeople.com
                    Attorney for Plaintiff